UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PERFECTION FENCE CORP. and<br>PERFECTION BUILDING PRODUCTS, INC., | :<br>:<br>: |
| Plaintiffs, | : CIVIL ACTION NO.<br>: |
| v. | :<br>: |
| PGP GROUP, LLC d/b/a ATLAS COMPANIES, | :<br>: August 19, 2005 |
| Defendant. | : |

## VERIFIED COMPLAINT

Plaintiffs Perfection Fence Corp. ("PFC") and Perfection Building Products, Inc. ("PBP") (collectively "Perfection") bring this complaint pursuant to the Copyright Law of the United States, and under the laws of the State of Connecticut, against Defendant PGP Group, LLC d/b/a Atlas Companies ("PGP").

## NATURE OF THE ACTION

1.  In this action, Perfection, a designer and manufacturer of high-end fences and related products, seeks damages and preliminary and permanent injunctive relief against PGP, a direct competitor. PGP has taken pictures owned by Perfection and published in Perfection's copyrighted catalogues, and published them in PGP's catalogue.

2.  PGP has knowingly infringed Perfection's copyrights by blatantly publishing Perfection's pictures as its own, in an attempt to divert customers from Perfection and Perfection's authorized dealers. Perfection is an established business within the fence industry, having designed and manufactured high-quality fence products for many years. When PGP presents Perfection's products as its own there is great

potential for customer confusion, especially given that there is an actual authorized Perfection dealer in the immediate PGP area. Even apart from the high probability of customer confusion, however, it is clear that PGP has infringed Perfection's copyrights. Perfection demanded that PGP cease and desist its unlawful behavior, but to date, PGP has not responded satisfactorily, continuing to violate Perfection's rights, and appears quite likely to continue to do so unless and until this Court enjoins PGP's illegal practices.

## PARTIES

3. Plaintiff Perfection Fence Corp. ("PFC") is a Massachusetts corporation with a principal place of business at 635 Plain Street, Marshfield, MA 02050.

4. Plaintiff Perfection Building Products ("PBP") is a Massachusetts corporation with a principal place of business at 635 Plain Street, Marshfield, MA 02050.

5. Upon information and belief, defendant PGP Group, LLC is a Connecticut limited liability company with a principal place of business at 30 Northeast Industrial Road, Branford, CT 06405. Upon information and belief, PGP Group, LLC does business as "Atlas Companies."

## JURISDICTION AND VENUE

6. This action arises under the Copyright Laws of the United States, and under the laws of the State of Connecticut.

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367. The amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interests and costs.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## FACTS

**Background**

9.      Perfection was established in 1993, building upon several decades of experience in the fencing industry. Perfection specializes in the design, manufacture and installation of high-end fences and related products, including pergolas, arbors, railings, lantern and mailbox posts, and shower and air conditioning enclosures.

10.     Perfection's product line reflects its expertise with varied materials including wood, ornamental picket, chain link and vinyl. All of Perfection's products are distinctive, but most especially its vinyl fencing products, which consist of a special vinyl, *Forever Vinyl*™, which provides the appearance of decorative wood.

11.     Perfection's corporate headquarters are located in Marshfield, Massachusetts and consist of a showroom, offices, multiple manufacturing plants, warehouses and storage. Perfection also has a showroom located in Mashpee on Cape Cod.

12.     Perfection also has a network of authorized dealers throughout New England, including one in North Branford, Connecticut, a town contiguous with the town where PGP is located, and Perfection's high quality products have earned it an excellent reputation throughout the United States.

13.     Perfection's reputation has been built on maintaining rigorous standards and ensuring that all Perfection products adhere to those standards. In keeping with this desire to ensure that products with the Perfection name on them are the high-quality products Perfection is known for, Perfection only allows *authorized* dealers to sell its products.

14. Perfection devotes substantial resources to advertising in a variety of mediums, including newspapers, magazines, direct mailings, radio, television, and the Internet. Furthermore, Perfection produces an exhaustive catalogue, documenting the breadth of its offerings, thereby extending Perfection's reach well beyond the immediate area of its headquarters.

15. In 2004, Perfection spent more than $ 268,000 on advertising.

16. PGP is a direct competitor of Perfection, producing product lines that contain offerings similar to those manufactured and sold by Perfection.

17. Upon information and belief, PGP currently operates one large store in Connecticut at its corporate headquarters. This store, however, is located in Branford and, therefore, competes directly with Perfection's Authorized Dealer located in North Branford, the neighboring town.

18. Upon information and belief, PGP purportedly bought most of the assets of Atlas Outdoor, LLC ("Atlas Outdoor") and a number of affiliates at a secured party liquidation sale held on March 13, 2004. Upon information and belief, PGP is currently involved in litigation over the propriety of this "sale." Significantly, PGP is located at the same address as Atlas Outdoor's former headquarters; many of the same individuals are involved in the operation of the business; PGP uses the web address www.atlasoutdoor.com; and PGP utilizes old Atlas Outdoor catalogues which contain significant numbers of Perfection's copyrighted photographs. Upon information and belief, for an extended period of time after the "sale," PGP used actual Atlas Outdoor catalogues, with the only perceivable alteration being the addition of a couple of stickers to the back cover in an attempt to block the defunct Atlas Outdoor locations, although the

4

Atlas Outdoor name was left unobscured. Although PGP appears to have since reprinted these catalogues with the PGP name (indicating it does business as "Atlas Companies") on them, the content, design and layout of the catalogues is otherwise identical and still includes the copyrighted Perfection material. Furthermore, PGP is using a company emblem that appears identical to that of Atlas Outdoor, except that the word "outdoor" has been replaced by "companies."

19. Atlas Outdoor formerly served as an Authorized Dealer within the State of Connecticut for vinyl fencing products designed, manufactured and distributed by PBP, pursuant to a Vinyl Fencing Authorized Dealer Agreement ("Dealer Agreement"), a copy of which is attached hereto as Exhibit A. The Dealer Agreement commenced on June 1, 2002, and was terminated during May 2003.

20. Upon termination of the Dealer Agreement, Atlas Outdoor was obligated to "cease making use of any sign, printed material, trademarks, brand name or other Proprietary Marks identified with PBP without the express written consent of PBP, and refrain from holding itself out as having been formerly connected in any way with PBP." See Exhibit A at ¶ 8.4(c).

21. In connection with Atlas Outdoor's role as an Authorized Dealer, on or about May 13, 2002, PFC and Atlas Outdoor entered into a Photograph Agreement, a copy of which is attached hereto as Exhibit B, pursuant to which PFC furnished Atlas Outdoor with certain photographs, diagrams and/or drawings of products designed, manufactured and distributed by PFC and PBP, for use by Atlas Outdoor in its advertising promotions *in its capacity* as a dealer for PBP.

22. Upon termination of Atlas Outdoor's relationship with PBP, the Photograph Agreement provided that Atlas Outdoor had to immediately: 1) cease from reprinting any and all advertising materials that contain photographs, diagrams and/or drawings provided to Atlas Outdoor by PFC; 2) turn over to PFC all photographs, diagrams and/or drawings of Perfection's vinyl products; and 3) forward to PFC within 120 days of the termination of the relationship, any and all advertising literature that contained reproductions of photographs, diagrams and/or drawings provided by PFC. See Exhibit B at ¶ 7.

23. The Dealer Agreement was terminated during May 2003.

**Perfection's Copyrighted Catalogues**

24. Perfection showcases its products, including its vinyl fencing products, through its copyrighted catalogues. These copyrighted catalogues include ones published in 2002 and 2004. Copies of each catalogue are attached hereto as Exhibits C and D respectively.

25. In or about April 2003, PFC filed a copyright registration for its 2002 catalogue. A copy of the copyright registration is attached hereto as Exhibit E. Copies of the 2002 catalogue have borne appropriate copyright notices since their first release to the public on or about August 6, 2002.

26. In or about October 2004, PFC filed a copyright registration for its 2004 catalogue. A copy of the copyright registration is attached hereto as Exhibit F. Copies of the 2004 catalogue have borne appropriate copyright notices since their first release to the public on or about June 1, 2004.

27.  Both the 2002 and 2004 catalogues were distributed nationwide and were readily available to the public. Atlas Outdoor and PGP, therefore, had access to the copyrighted catalogues, and accordingly, notice of the copyrights.

28.  Furthermore, pursuant to the Dealer Agreement and Photograph Agreement, Atlas Outdoor had access to a significant portion of the material contained within the copyrighted catalogues, including, but not limited to, photographs. In many instances, the photographs contained in Perfection's copyrighted catalogues are of products installed for actual Perfection customers.

**PGP's Willful Infringement of Perfection's Catalogues**

29.  Despite the clear copyright notices on Perfection's catalogues, PGP copied substantial portions of Perfection's copyrighted catalogues – without Perfection's authorization or consent – for use in its own product catalogues, including The Atlas Companies' 2004 catalogue titled "Custom PVC Products" ("Atlas 2004 Catalogue"). A copy of the Atlas 2004 Catalogue is attached hereto as Exhibit G.

30.  A substantial portion of the Atlas 2004 Catalogue contains exactly the same photographs as contained in Perfection's catalogues, although in a few instances, PGP was particularly crafty and either flipped the image or cropped it, in a vain attempt to try to conceal its blatantly illegal behavior.

31.  Due to the close proximity of PGP's headquarters to Perfection's Authorized Dealer, as well as the overlap in the areas most likely reached by the companies' respective catalogues, the intended, and likely, effect of PGP's conduct clearly is customer confusion and a loss of business by Perfection.

32. The number of identical photographs in each of Perfection's catalogues as compared to the Atlas 2004 Catalogue is significant, and belies any attempted argument that perhaps PGP merely has or installed similar products.

33. Any possible claims of "coincidence" are further undermined by the fact that, despite representations by Atlas Outdoor to Perfection that all of Perfection's materials had been returned to Perfection upon termination of the Authorized Dealer relationship, upon information and belief, Atlas Outdoor retained such materials or copies thereof. Those materials include the photographs included in Perfection's copyrighted 2002 and 2004 catalogues. Not only did PGP, as the successor entity to Atlas Outdoor, wrongfully retain materials provided under the Dealer Agreement and Photograph Agreement, but PGP then used the photographs without authorization and in breach of contract, in the Atlas 2004 Catalogue.

34. The layout of the catalogues, including the order of sections for the different product lines, is substantially similar.

35. The following table summarizes the portions of the Atlas 2004 Catalogue that are identical to Perfection's copyrighted catalogues and that were intentionally copied by PGP from such catalogues or reprinted from photographs that were shared with Atlas under the Photograph Agreement:

| **Photograph[1]** | **Atlas 2004 PVC Brochure** | **Perfection Brochures** |
|---|---|---|
| Pergola | Pages 1, 7 | 2002: Page 16, 2004: Page 28 |
| Vinyl, Corner View | Page 16 | 2002: Page 43 |
| Vinyl Picket | Page 11 | 2002: Page 41, 2004: Page 66 |
| Shower Enclosure | Page 15 | 2002: Page 68, 2004: Page 111 |
| Vinyl Grand Arbor | Page 12 | 2002: Page 27 |
| Slope Section | Page 19 | 2002: Page 23 |

---

[1] The words used to identify the photographs are intended merely to be descriptive and are not meant to serve as particular titles of the photographs or what is pictured therein.

| | | |
|---|---|---|
| Gate Closeup | Pages 1, 16 | 2002: Page 36, 2004: Page 60 |
| Formal Entrance | Pages 1, 18 | 2002: Page 37, 2004: Page 61 |
| English Lattice | Pages 1, 10 | 2002: Page 30, 2004: Page 50 |
| Greenwich Rails | Pages 1, 15 | 2002: Page 46, 2004: Page 74 |
| Pergola & Gate | Page 9 | 2002: Page 22, 2004: Page 40 |
| Arbor w/Lattice | Pages 1, 2 | 2002: Page 42, 2004: Page 68 |
| A/C Enclosure | Pages 1, 15 | 2002: Page 28, 2004: Page 48 |
| Fence w/Arbor | Page 3 | 2002: Page 43, 2004: Page 69 |
| Pergola Contrast | Page 9 | 2002: Page 43, 2004: Page 69 |
| Colonial Details | Page 19 | 2002: Page 20 |
| Estate Rail | Pages 1, 11 | 2002: Page 44, 2004: Page 70 |
| Lattice Fencing | Pages 1, 14 | 2002: Page 31, 2004: Page 51 |
| Lantern Post | Page 1 | 2002: Page 71, 2004: Page 115 |
| Elliptical Grand Arbor | Page 4 | 2002: Page 35, 2004: Page 59 |
| Arbor w/Lattice | Page 4 | 2002: Page 31, 2004: Page 51 |
| Arched-Top Gate | Page 5 | 2002: Page 29, 2004: Page 49 |
| Grand Arbor w/Lattice | Page 5 | 2002: Cover |
| Lantern Post w/Fence | Page 10 | 2002: Page 34, 2004: Page 56 |
| Privacy Fencing | Pages 12-13 (background) | 2002: Page 21, 2004: Page 39 |
| Scalloped Fencing | Page 13 | 2002: Page 25 |
| Sloped Transition | Page 19 | 2002: Page 42, 2004: Page 68 |

36. PGP is engaged in precisely the same business as Perfection, at a location close to Perfection's Authorized Dealer, and is doing so with catalogues that incorporate substantial portions of Perfection's catalogues, in order to divert legitimate Perfection customers to its store and to trade on the goodwill associated with a high-quality Perfection product. PGP is causing confusion in the minds of customers and irreparable harm to the reputation and business of Perfection.

37. Incredibly, this is not the first time certain key individuals associated with PGP have engaged in this type of illegal conduct. In 2002, PGP's predecessor entity, Atlas Outdoor, was sued by Walpole Woodworkers, Inc. in this District, for copyright infringement. There, Atlas had literally lifted pictures, text and pricing information from Walpole Woodworkers' catalogues, and pasted them into their own. In that case, the court determined that not only did Atlas Outdoor infringe on Walpole Woodworkers'

copyrights, among other things, but also, such infringement was willful.[2] Upon information and belief, certain individuals who held key positions at Atlas Outdoor and were party to the infringement of Walpole Woodworkers' copyrights, including Michael Picard, the CEO of Atlas Outdoor, now work at and play integral roles in, PGP.

**PGP's Illegal Conduct Also Qualifies as False and Deceptive Advertising**

38.     Upon information and belief, PGP is also engaged in false and deceptive advertising practices.

39.     Given that PGP is not authorized to sell any Perfection materials or products, none of the Perfection products that appear in the Atlas 2004 Catalogue are actually sold by PGP. Rather, on information and belief, when a customer orders one of the Perfection products pictured in the Atlas 2004 Catalogue, PGP instead delivers to the customer a lower-quality PGP product.

40.     PGP's use of Perfection's copyrighted materials in promoting its catalogue is, therefore, likely to cause customer confusion and illegally divert customers away from Perfection to PGP.

**PGP's Insufficient Response to Perfection's Demand That PGP Cease and Desist**

41.     On June 24, 2005, Perfection's counsel sent a letter via certified mail, return receipt requested, to PGP at its principal place of business, informing PGP that it was violating numerous state and federal laws and demanding that it cease and desist distributing, using, selling, displaying or disposing of in any manner the 2004 Atlas Catalogue, as well as any other materials that contain photographs, diagrams or drawings provided by PFC, including any in-store displays. A copy of this correspondence is

---

[2] Attached hereto as Exhibit H is a copy of the court's ruling on several motions in the Walpole Woodworkers litigation, in which the court addresses the willful nature of Atlas Outdoor's infringement.

attached hereto as <u>Exhibit I</u>. Additionally, Perfection requested that PGP forward to Perfection all copies of the 2004 Atlas Catalogue and return to Perfection all photographs, diagrams and/or drawings of PFC and PBP's vinyl fabrication and installation in PGP's possession or control.

42. PGP forwarded to Perfection a certain number of the 2004 Atlas Catalogues, but Perfection did not receive any additional materials or any correspondence, apart from a brief written response to Perfection's counsel wherein PGP represented that those four boxes were the entirety of its inventory. See <u>Exhibit J</u> attached hereto. However, given the relatively small number of catalogues sent by PGP to Perfection, it is highly unlikely that PGP has sent *all* copies of the 2004 Atlas Catalogue, especially in light of the fact that when Atlas Outdoor acted as a Perfection Authorized Dealer, Atlas Outdoor informed Perfection that it typically held catalogue inventory expected to last from six months to one year.

43. PGP, somewhat incredulously, maintains that it "inadvertently" continued to use Atlas Outdoor advertising material, unaware that it contained copyrighted Perfection material. This contention is rather suspect, since Michael Picard, former CEO of Atlas Outdoor, upon information and belief, is still associated with PGP. During the Walpole Woodworkers litigation it was revealed that Mr. Picard was intimately involved in the production of Atlas Outdoor catalogues, and in the instant situation, he was the person who negotiated and signed the Dealer Agreement and Photograph Agreement. Therefore, he certainly should realize what material was in the Atlas Outdoor catalogues and that their continued use would be a copyright violation. Additionally, PGP acknowledges that it should not have been using advertising materials previously

produced by Atlas Outdoor and, accordingly, categorizes such use as "inadvertent". Further, the initial catalogues used by PGP said "Atlas Outdoor" on the covers and listed all of Atlas Outdoor's locations, albeit partially obscured by stickers. Subsequent PGP runs of the catalogues, while changing the name on the covers and deleting some of the defunct store locations, otherwise consist of exactly the same content, design and layout as the Atlas Outdoor catalogues. Finally, in the Walpole Woodworkers litigation, PGP's predecessor entity, Atlas Outdoor, failed to fully adhere to court orders concerning the cessation of distribution and return and/or destruction of copyrighted materials, despite its representations of compliance. Given that many of the same principals are involved in PGP, Perfection reasonably questions the veracity of PGP's claims that it has returned all materials and that it will cease distributing the violative catalogues.

44. To date, Perfection has not received any of its materials previously provided to PGP's predecessor, Atlas Outdoor, under the Dealer and Photograph Agreements, including photographs, diagrams and drawings of Perfection products. PGP's continued possession of the materials constitutes a breach of contract, but also, given that these materials likely facilitated PGP's theft of Perfection's copyrighted information, PGP's retention of the materials provides PGP with a means to repeatedly violate Perfection's copyrights.

## COUNT I
### (Copyright Infringement)

45. Perfection repeats and realleges the allegations contained in paragraphs 1 through 44 of its Verified Complaint as if fully set forth herein.

46. Perfection's 2002 and 2004 catalogues are copyrightable subject matter under 17 U.S.C. § 102(a) and have been registered with the United States Copyright Office, pursuant to 17 U.S.C. § 411.

47. Perfection has complied in all respects with the Copyright Act and all other laws of the United States governing copyrights and is, therefore, entitled to exercise all rights enumerated in 17 U.S.C. § 106 with respect to its 2002 and 2004 catalogues.

48. Upon information and belief, PGP has violated 17 U.S.C. § 501 by reproducing and distributing substantial portions of Perfection's 2002 and 2004 catalogues. Unless enjoined pursuant to 17 U.S.C. § 502, PGP will continue to reproduce and distribute portions of Perfection's 2002 and 2004 catalogues, thereby causing Perfection immediate and irreparable harm.

49. PGP's infringement of Perfection's copyrights was willful.

50. Perfection has already been reparably and irreparably damaged as a direct and proximate result of these actions by PGP.

## COUNT II
### (Unfair Trade Practices – Conn. Gen. Stat. § 42-110a *et seq.*)

51. Perfection repeats and realleges the allegations contained in paragraphs 1 through 50 of its Verified Complaint as if fully set forth herein.

52. PGP is a person engaged in trade or commerce within the State of Connecticut within the meaning of Conn. Gen. Stat. § 42-110b.

53. PGP's acts, conduct and practices described above, including, without limitation, the use of Perfection's copyrights in the 2004 Atlas Catalogue as part of a bait-and-switch scheme constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce under Conn. Gen. Stat. § 42-110a *et seq.*

54. PGP's acts, conduct and practices described above occurred within the State of Connecticut.

55. As a direct and proximate result of PGP's violations of Conn. Gen. Stat. § 42-110a *et seq.*, Perfection has been and will continue to be reparably and irreparably damaged.

56. Pursuant to Conn. Gen. Stat. § 42-110g(c), copies of this Verified Complaint are being mailed to the Connecticut Attorney General and Commissioner of Consumer Protection.

### COUNT III
### (Breach of Contract)

57. Perfection repeats and realleges the allegations contained in paragraphs 1 through 56 of its Verified Complaint as if fully set forth herein.

58. PGP is the successor to Atlas Outdoor

59. Perfection performed or substantially performed all of its obligations under the Photograph Agreement, from the agreement's effective date through the date on which it was terminated in May 2003.

60. Once the Authorized Dealer relationship was terminated, PGP's predecessor entity, Atlas Outdoor, was required to cease using Perfection materials in any form of advertising, including reprints, return all materials to Perfection and forward any advertising literature containing Perfection materials. Although Atlas Outdoor represented that it had fulfilled these obligations, in fact, Atlas Outdoor either retained such materials or copies thereof.

61. By retaining Perfection materials after the termination of the Authorized Dealer relationship, Atlas Outdoor breached the Photograph Agreement and Perfection has incurred damages as a result thereof.

62. Although PGP supposedly is an entity separate from Atlas Outdoor, certain facts suggest otherwise. PGP is engaging in the same business as Atlas Outdoor and operating out of the same location as Atlas Outdoor's former headquarters. PGP uses Atlas Outdoor's web address, www.atlasoutdoor.com, and is using a company emblem that is nearly identical to Atlas Outdoor's emblem. Upon information and belief, many of Atlas Outdoor's key individuals, including Michael Picard, are now with PGP. PGP used Atlas Outdoor catalogues with only a name change on the covers and no apparent edits to the contents. Finally, PGP is currently involved in litigation over the propriety of the alleged liquidation sale at which it purchased Atlas Outdoor's assets. In short, the facts clearly suggest that PGP is nothing more than a fraudulent continuation of Atlas Outdoor.

63. By using Perfection materials in its advertising literature, PGP has breached the Photograph Agreement and Perfection has incurred damages as result thereof.

## CONCLUSION AND PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs PFC and PBP respectfully request the following relief:

A. That this Court preliminarily and permanently enjoin Defendant PGP, its employees, agents, servants, and all in privity with any of them, from directly or indirectly copying, distributing, using, selling or disposing of in any manner, materials which infringe Perfection's copyrights;

B.   That this Court require Defendant PGP to recall from commerce immediately any advertising, marketing or other materials that infringe Perfection's copyrights, including, but not limited to the 2004 Atlas Catalogue, and to provide sworn and documentary proof that all such recall is being and has been accomplished;

C.   That this Court order Defendant PGP to cease using and to immediately return to Perfection all Perfection materials, including, but not limited to photographs, diagrams or drawings provided by PFC, including any in-store displays, and to provide sworn and documentary proof that all such information has been returned;

D.   That this Court award Perfection compensatory damages in an amount to be determined at trial;

E.   That this Court order all materials derived from Perfection's copyrighted works in the possession or control of PGP, including, but not limited to, pages 1-5, 7, 9-16, and 18-19 of the 2004 Atlas Catalogue, be impounded and destroyed, as provided by 17 U.S.C. § 503;

F.   That PGP be required to pay the greater of:

(1)   The actual damages suffered by Perfection and the unjust enrichment of PGP; or

(2)   Statutory damages for willful infringement of Perfection's copyrights pursuant to 17 U.S.C. § 504(c)(2).

G.   That PGP be required to pay Perfection punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a); and,

     H.    That PGP be required to pay Perfection its costs, including reasonable attorneys' fees, and such other and further equitable relief that this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all counts of its Verified Complaint.

Respectfully submitted,

PLAINTIFFS –
PERFECTION FENCE CORP. and
PERFECTION BUILDING PRODUCTS, INC.

By: _____

Lewis H. Chimes (*Federal Bar No. ct07023*)
Robert A. Richardson (*Federal Bar No. ct09818*)
David C. Nelson (*Federal Bar No. ct25640*)
GARRISON, LEVIN-EPSTEIN,
CHIMES & RICHARDSON, P.C.
405 Orange Street
New Haven, CT 06511
Telephone: (203) 777-4425
Facsimile: (203) 776-3965
Email: Lchimes@garrisonlaw.com
Email: Rrichardson@garrisonlaw.com
Email: Dnelson@garrisonlaw.com

Of Counsel:

Francis J. Sally (BBO #439100)*
Andrea Peraner-Sweet (BBO #550515)*
Elizabeth J. Koenig (BBO #647122)*
SALLY & FITCH LLP
225 Franklin Street
Boston, MA 02110
Telephone: (617) 542-5542
Facsimile: (617) 542-1542
Email: fjs@sally-fitch.com
       aps@sally-fitch.com
       ejk@sally-fitch.com

*Pending Admission Pro Hac Vice*

## **VERIFICATION**

I, Bryan S. Skulsky, am President of Perfection Fence Corp. and Perfection Building Products, Inc. and declare under pains and penalty of perjury that I have read the foregoing Verified Complaint and that the facts alleged therein are true and correct of my own personal knowledge, except for those matters alleged to be on information and belief, as to them, I believe them to be true and correct.

_____

Subscribed and sworn to before me this _16th_ day of August, 2005.

_____
Notary Public

DOLORES A. CICCANESI
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 25, 2011